Horace LUCKEY, III, et al.,
Plaintiffs–Appellants,

v.

Joe Frank HARRIS, Governor, et al.,
Defendants–Appellees.

No. 88–8047.

United States Court of Appeals,
Eleventh Circuit.

Dec. 29, 1989.

Neil Bradley and Laughlin McDonald, American Civil Liberties Union Foundation, Inc., David A. Webster, Robert B. Remar, Atlanta, Ga., for plaintiffs-appellants.

Alfred L. Evans, Jr., Sr. Asst. Atty. Gen., Atlanta, Ga., for defendants-appellees.

ON PETITIONS FOR REHEARING
AND SUGGESTIONS OF
REHEARING IN BANC

Before VANCE * and HATCHETT, Circuit Judges, and SCOTT **, District Judge.

PER CURIAM:

The Petition(s) for Rehearing are DENIED and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35–5), the Suggestion(s) of Rehearing In Banc are also DENIED.

EDMONDSON, Circuit Judge, dissenting in which TJOFLAT, Chief Judge, FAY and COX, Circuit Judges, join:

Concerns of equity, comity and federalism make this an exceptionally important case. Today's court unfortunately has declined to give the case that extra consideration which comes with in banc rehearing. On our court, dissents are rarely written when we decline in banc rehearing; but the principles involved here require me to protest and to explain briefly the way I see the case.

The district judge dismissed this case, believing that he lacked the authority to grant the relief sought by plaintiffs. I believe the district court's judgment was correct. The panel opinion misconstrues the sixth amendment and disregards considerations of comity and federalism that underlie *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, including our own decisions. The result of these errors is to place Georgia's state courts potentially under the direct supervision of a single federal district judge.

The panel opinion holds that the following allegations are sufficient to state a claim for injunctive relief (presumably enforceable by contempt) against the Governor of Georgia and *all* Georgia judges who preside over criminal trials of indigent defendants in the Georgia courts:

[Plaintiffs] have alleged that systematic delays in the appointment of counsel deny them their sixth amendment right to the representation of counsel at critical stages in the criminal process, hamper the ability of their counsel to defend them, and effectively deny them their eighth and fourteenth amendment right to bail, that their attorneys are denied investigative and expert resources necessary to defend them effectively, that their attorneys are pressured by courts to hurry their case to trial or to enter a guilty plea, and that they are denied equal protection of the laws.

*Luckey v. Harris*, 860 F.2d 1012, 1018 (11th Cir.1988). Plaintiffs' complaint asks the federal court to order defendants to pay indigent-defense lawyers more, to pro-

---

* Judge Vance participated in the poll of the court.

** Hon. Thomas E. Scott, U.S. District Judge for the Southern District of Florida, sitting by designation.

vide counsel earlier in the criminal process, and to provide more defense services and expert resources. I think that plaintiffs' sixth amendment allegations fail to state a claim upon which relief can be granted.[1]

Two sentences form the linchpin of the panel's opinion: "The sixth amendment protects rights that do not affect the outcome of a trial. Thus, deficiencies that do not meet the 'ineffectiveness' standard may nonetheless violate a defendant's rights under the sixth amendment." *Id.* at 1017. No citation of authority follows these statements. More important, this view of the sixth amendment is inconsistent with the language and rationale of both *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984).

The sixth amendment is inextricably bound up with the fairness of a defendant's trial: "[T]he right to the effective assistance of counsel is recognized *not for its own sake,* but because of the effect it has on the ability of the accused to receive a *fair trial." Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046 (emphasis added). "[T]he Sixth Amendment['s purpose] is not to improve the quality of legal representation...." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, *any deficiencies* in counsel's performance *must be prejudicial* to the defense in order *to constitute ineffective assistance* under the Constitution." *Id.* at 691–92, 104 S.Ct. at 2067 (emphasis added). Thus, the sixth amendment right to counsel is not an abstract right to a particular level of representation; it is the right to the representa-

tion necessary for a fair trial. There can be no sixth amendment violation in the absence of prejudice at a particular trial.[2] Put differently, if there is no prejudice, the alleged sixth amendment violation is not merely harmless; there is no violation at all.

Because prejudice is an essential element of any sixth amendment violation, sixth amendment claims cannot be adjudicated apart from the circumstances of a particular case. Put differently, no claim for relief can be stated in general terms as was attempted here. The sixth amendment does not lend itself to a rigid set of rules. For example, "the Constitution nowhere specifies any period which must intervene between the required appointment of counsel and trial...." *Avery v. Alabama,* 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940). Although plaintiffs allege that delays in the appointment of counsel deny them counsel at "critical stages" in the criminal process, this conclusory allegation fails to identify the "critical stage" at which Georgia systematically denies counsel to indigent defendants. This allegation is inadequate and does not put Georgia on notice of the alleged unconstitutional conduct. *See Frankos v. LaVallee,* 535 F.2d 1346 (2d Cir.1976); *see also Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir. 1987) ("allegations which are nothing more than broad, simple conclusory statements are insufficient to state a claim under § 1983"). But even if I assume that the complaint alleges a sixth amendment violation, I think the panel opinion is wrong.

The most troublesome aspect of this case is its disregard for federalism and comity between federal and state courts. The lower federal courts are not and ought not to be the general supervisors of state courts; yet this is what the complaint seeks. Low-

---

1. Our panel discussed only plaintiffs' sixth amendment claims. Therefore, I do not address whether the complaint may have stated a sufficient claim based on either the eighth amendment or equal protection.

2. The Supreme Court has said that in certain limited circumstances prejudice need not be proved but can be presumed. *See Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. Still, there

must be prejudice (proven or presumed) in a specific case. Plaintiffs allege none of the circumstances that the Supreme Court has held may support a presumption of prejudice. Nor do they even allege that Georgia systematically engages in a specific practice which they say warrants a presumption of prejudice. Of course, no one claims that indigent defendants in Georgia are regularly tried without counsel.

er federal courts—that is, district and circuit courts—can enforce the sixth amendment against the states; but the appropriate enforcement mechanism is post-conviction habeas corpus relief, operating on a case-by-case basis and grounded upon a finding of prejudice.

The state defendants contend that "considerations of federalism alone" would be enough to justify the district court's judgment and, in the district court, moved to dismiss per Fed.R.Civ.P. 12(b)(1), (2), and (6). But even if abstention has not been asserted expressly, the abstention doctrine is much more than a "pleader's option." *See Zwickler v. Koota*, 389 U.S. 241, 256, 88 S.Ct. 391, 400, 19 L.Ed.2d 444 (1967) (Harlan, J., concurring). The Supreme Court, on its own motion, has requested parties to brief the *Younger* abstention issue and refused to abstain only after both parties urged a decision on the constitutional merits. *See Sosna v. Iowa*, 419 U.S. 393, 396 n. 3, 95 S.Ct. 553, 556 n. 3, 42 L.Ed.2d 532 (1975). As stated in *Mitchell Family Planning Inc. v. City of Royal Oak*, 335 F.Supp. 738, 740 (E.D.Mich.1972), "[w]hile defendants have not argued [*Younger*] abstention, it is a matter which the court must consider when it is requested to act in a manner which may affect the sensitive area of federal-state relations."

Dismissal of the action pursuant to Fed.R.Civ.P. 12(b) is not only supported by precedent, but is mandated by case law of the Supreme Court and of this circuit. For example, in *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), the Supreme Court upheld the district court's dismissal of the action because plaintiffs failed to present an existing case or controversy and because they stated no adequate basis for equitable relief. *Younger's* principles of federalism and comity prevented the Court from granting the requested relief because the injunction would have been a "major continuing intrusion" of federal power into the daily operations of state criminal procedures. The action was thus properly dismissed because it failed to state a claim for which relief could be granted. Defendants have a right to avoid not only the judgment, but the process of defending themselves in federal courts; that is what Rule 12(b) is about. When the potential interference with state courts is unacceptable, a 12(b) dismissal is the appropriate reaction. What is said in *O'Shea* is on point here and summarizes my chief criticism of the panel opinion:

> What [plaintiff-respondents] seek is an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials. The order the Court of Appeals thought should be available if respondents proved their allegations would be operative only where permissible state prosecutions are pending against one or more of the beneficiaries of the injunction. Apparently the order would contemplate interruption of state proceedings to adjudicate assertions of noncompliance by petitioners. This seems to us nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris* and related cases sought to prevent.

414 U.S. at 500, 94 S.Ct. at 678, 38 L.Ed.2d at 686.

I know that a panel of this court once in the past granted prospective relief to secure constitutional standards in state criminal proceedings, but that case did not involve sixth amendment ineffectiveness of counsel claims. In *Pugh v. Rainwater*, 483 F.2d 778 (5th Cir.1973), *rev'd in part on other grounds sub nom. Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Fifth Circuit held that *Younger* considerations did not preclude granting relief to a class of pre-trial detainees challenging Florida's procedure of pre-trial detention without a probable cause hearing. *Rainwater*, however, does not support prospective relief for every claim of constitutional violations in state criminal proceedings. The Fifth Circuit wrote, "[w]e have never intimated that abstention is appropriate where there is no state court prosecution to be interfered with and where the plaintiff seeking relief in federal court has no alternative forum in which to raise his

constitutional claim." 483 F.2d at 782 (quoting *Morgan v. Wofford*, 472 F.2d 822, 826 (5th Cir.1972)). The court then found that abstention was not required because the plaintiffs' pre-trial incarceration would have ended as of the time of trial, leaving them with no remedy; each claim to a pre-trial preliminary hearing would be mooted by conviction or exoneration.

*Luckey* is a different case. Equity need not intervene immediately in plaintiffs' state trials. Plaintiffs have an adequate remedy *at law* for any ineffective assistance of counsel they may actually receive. Most important, they can present objections to sixth amendment violations at their state trials and in their state appeals. "They [also] can challenge the legality of their custody via federal habeas corpus, subject, of course, to prior exhaustion of state remedies." *Gardner v. Luckey*, 500 F.2d 712, 715 (5th Cir.1974).

Not only is the panel decision unsupported by Eleventh Circuit precedent, I think it conflicts with prior cases. In *Gardner v. Luckey*, a class of defendants asked the court for an injunction ordering the Florida Public Defenders Offices to pay higher salaries, provide representation at earlier stages of criminal proceedings, and reduce caseloads of individual attorneys. In affirming the district court's dismissal of the action at the pleading stage, Judge Godbold wrote for the panel that "[t]his case bears a strong resemblance to *O'Shea v. Littleton*." *Id.* at 714. "It is clear from the face of the complaint that our appellants contemplate exactly the sort of intrusive and unworkable supervision of state judicial processes condemned in *O'Shea*." *Id.* at 715.

In *Tarter v. Hury*, 646 F.2d 1010 (5th Cir.Unit A 1981), the court expressly concluded that the federalism and comity considerations of *O'Shea* applied to the claim that Galveston County, Texas provided ineffective court-appointed counsel. According to the court, "[g]ranting and enforcing the equitable relief sought by Tarter to remedy those alleged improprieties would require the same anticipatory interference condemned in *O'Shea*." *Id.* at 1013 n. 5

(affirming the district court's dismissal of the action before pleadings were served on defendants).

A case similar to *Luckey* but from another circuit is *Wallace v. Kern*, 499 F.2d 1345 (2d Cir.1974). The words of the Second Circuit in the context of that speedy trial case seem apt in the context of this effective assistance of counsel case:

> This is not the proper business of the federal courts, which have no supervisory authority over the state courts and have no power to establish rules of practice for the state courts. Rather, the federal courts must limit their inquiry to the specific facts regarding a complaining petitioner. Relief from unconstitutional delays in criminal trials is not available in wholesale lots. Whether an individual has been denied his right to a speedy trial must be determined ad hoc on a case-by-case basis.

*Id.* at 1351.

If plaintiffs state a claim for injunctive relief here, federal habeas corpus need not exist. We could simply and broadly enjoin all state court judges to apply the Constitution as we dictate; monitor the state judges' performance; allow criminal defendants in the midst of state proceedings to come to federal court to seek enforcement of our injunction; and, if need be, hold state court judges in contempt for not doing as we say. When we embark on this new course, we must prepare to face this unpleasant question: If a state judge does not obey a district judge's injunction, are we willing to jail the state judge for contempt? Avoidance of this unseemly conflict between state and federal judges is one reason for *O'Shea* and *Younger*.

It may well be that Georgia ought to reform the way it finances and otherwise provides counsel to indigent defendants. If reforms are not undertaken, it may well be that more and more state prisoners will have their convictions voided on sixth amendment grounds by state and federal courts. But, for now, this is Georgia's business: the business of Georgia's judges, legislators, and voters. While the lower federal courts are protectors of constitu-

tional rights, that power does not make us the general superintendents of state court systems. I think the panel decision in this case is wrong, and I regret that a whole court has had no chance to study the case fully.

I would grant a rehearing in banc.